740 F.2d 185
 21 ERC 1765, 14 Envtl. L. Rep. 20,677
 TOWN OF ORANGETOWN, Plaintiff-Appellant,
v.
William RUCKELSHAUS, Individually and as Administrator of
the United States Environmental Protection Agency,
Jacqueline Schafer, Individually and as Regional
Administrator of Region II of the United States
Environmental Protection Agency, Rockland County Sewer
District No. 1, County of Rockland, and Henry G. Williams,
as Commissioner of the New York State Department of
Environmental Conservation, Defendants-Appellees.
 Cal. No. 1312, Docket 84-6089.
 United States Court of Appeals,
Second Circuit.
 Argued May 10, 1984.
Decided July 25, 1984.
 
 David Sive, New York City (Winer, Neuburger & Sive, Daniel Riesel and Jeffrey M. Blum, New York City, of counsel), for plaintiff-appellant.
 Peter A.A. Berle, New York City (Berle, Butzel, Kass & Case and Carol A. Buckler, New York City, of counsel), for defendants-appellees, Rockland County Sewer District No. 1 and County of Rockland.
 Carolyn L. Simpson, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Thomas D. Warren, Asst. U.S. Atty., and Gary Rowen, Asst. Regional Counsel, New York City, of counsel), for defendants-appellees, William Ruckelshaus and Jacqueline Schafer.
 James Periconi, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., New York City, of counsel), for defendant-appellee, Henry G. Williams.
 Before OAKES and VAN GRAAFEILAND, Circuit Judges, and BONSAL,* District Judge.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 The Town of Orangetown comes to this Court for a second time as part of its continuing effort to prevent the Environmental Protection Agency (EPA) and the New York State Department of Environmental Conservation (DEC) from approving the awarding of federal grants for the modernization of an outmoded and overloaded sewage treatment plant operated by Rockland County Sewer District No. 1 (Rockland). On the prior appeal, Orangetown sought to overturn the dismissal of its lawsuit challenging an earlier phase of the sewage treatment plant expansion. This Court affirmed, and the Supreme Court denied certiorari. Town of Orangetown v. Gorsuch, 544 F.Supp. 105 (S.D.N.Y.1982), aff'd, 718 F.2d 29 (2d Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1592, 80 L.Ed.2d 124 (1984).
 
 
 2
 When Orangetown brought the instant action challenging a later phase of the project, appellees moved for dismissal and/or summary judgment, asserting that most of appellant's claims had been resolved in appellees' favor in the prior lawsuit and, alternatively as to the remaining claims, that the complaint failed to state a cause of action or appellees were entitled to summary judgment. By order dated January 13, 1984, 579 F.Supp. 15, District Judge Owen granted appellees' motions. Judgment of dismissal was entered on January 19, 1984. We affirm.
 
 
 3
 In an effort to expand and upgrade its overloaded waste treatment plant which is located in Orangetown, Rockland enlisted financial and technical assistance from the EPA and the DEC. Federal grants for waste treatment projects are divided into three steps. 40 C.F.R. Sec. 35.903(a). The Step 1 grant for facilities planning was made to Rockland in 1976. The Step 2 grant for plans and specifications was made in 1980, and became the subject of Orangetown's first lawsuit. Step 3, which is the subject of this appeal, involves the actual construction of the project planned in Steps 1 and 2. Step 3 has been divided into two separate phases. Phase I covers the installation of odor-control devices. Phase II entails the actual expansion and modification of the plant.
 
 
 4
 Before accepting the initial Phase II grant, Rockland objected to one of its conditions and declined to approve the award unless it was changed. The condition prohibited the making of new sewage hookups before the waste treatment plant expansion was completed. After the EPA reconsidered and amended the condition, Rockland accepted the grant.
 
 
 5
 In its complaint which is the subject of this appeal, Orangetown alleges (1) that the EPA submitted to improper political pressure which caused the agency to reverse its prior grant condition prohibiting new hookups to the Rockland plant, (2) that the EPA failed to make certain determinations required under the Clean Water Act (CWA), 33 U.S.C. Sec. 1251 et seq., and (3) that significant changes in the project required supplemental environmental assessment as provided for in the National Environmental Policy Act (NEPA), 42 U.S.C. Sec. 4321et seq. Orangetown seeks to enjoin the EPA and the DEC from approving the granting of funds, and Rockland from spending the allocated funds.
 
 
 6
 * To support a claim of improper political influence on a federal administrative agency, there must be some showing that the political pressure was intended to and did cause the agency's action to be influenced by factors not relevant under the controlling statute. See Sierra Club v. Costle, 657 F.2d 298, 409 (D.C.Cir.1981); Natural Resources Defense Council v. City of New York, 534 F.Supp. 279, 281 (S.D.N.Y.), aff'd, 672 F.2d 292 (2d Cir.), cert. dismissed, 102 S.Ct. 1963 (1982). The affidavits and exhibits submitted to the district court did not satisfy this requirement. The only support appellant presented for its claim were letters from State Senator Linda Winikow and Ramapo Town Councilman Maxwell Wortman to State and federal officials concerning the terms of the grant condition and a vague reference in an affidavit to a meeting between Winikow and EPA administrators. Winikow and Wortman expressed their opposition to the proposed grant condition because they believed that the prohibition of new hookups might have a detrimental impact on area development. These communications give no support to appellant's claim that extraneous factors influenced the agency's decision.
 
 
 7
 The potential effect of a proposed grant on area development is one of the relevant factors for the EPA to consider, Cape May Greene, Inc. v. Warren, 698 F.2d 179, 188 (3d Cir.1983), and elected officials should not be precluded from bringing those factors to administrators' attention, Sierra Club v. Costle, supra, 657 F.2d at 409-10. Orangetown "may not rest upon mere conclusory allegations" of improper political influence as a means of obtaining a trial. See Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir.1980) (quoting SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir.1978)). There is no indication that the EPA was influenced improperly to consider extraneous matters. See Natural Resources Defense Council v. City of New York, supra, 534 F.Supp. at 283; Citizens Comm. Against Interstate Route 675 v. Lewis, 542 F.Supp. 496, 579 (S.D.Ohio 1982). As the district court noted, the EPA's records of its reconsideration of the original grant condition "show a reasoned process of considering relevant factors."
 
 
 8
 Neither the Clean Water Act nor the National Environmental Policy Act [NEPA] addresses the subject of meetings with individuals outside the EPA regarding grant conditions for waste treatment projects. However, "[w]here agency action resembles judicial action, where it involves formal rulemaking, adjudication, or quasi-adjudication among 'conflicting private claims to a valuable privilege,' the insulation of the decisionmaker from ex parte contacts is justified by basic notions of due process to the parties involved." Sierra Club v. Costle, supra, 657 F.2d at 400 (footnotes omitted). On the other hand, where an agency is not performing a judicial or quasi-judicial function, ex parte contacts between public officials and agency administrators are not necessarily proscribed. Id. at 400-01; see Citizens Comm. Against Interstate Route 675 v. Lewis, supra, 542 F.Supp. at 579. In deciding whether to impose grant conditions on the Rockland plant, the EPA was not performing an adjudicatory function. The decision was an administrative one dealing with the disbursement of grant funds, and required no adversary proceeding. Orangetown did not have the status of a party and was not entitled to notice and an opportunity to be heard. See Sierra Club v. Costle, supra, 657 F.2d at 400 n. 501. Consequently, such communications as the EPA may have had with the two public officials did not deprive Orangetown of due process. See id. at 400-02; cf. Viacom International Inc. v. Federal Communications Commission, 672 F.2d 1034, 1043-44 (2d Cir.1982).
 
 II
 
 9
 We find no merit in appellant's arguments concerning allegedly deficient findings. The grant application checklist does not represent the total record of the required determinations; it simply indicates the steps taken in compliance with the regulations. The checklist serves to memorialize the fact that certain findings were made, the documentation for which is available elsewhere in the record. As this Court stated in rejecting Orangetown's prior appeal, "the regulations do not require the agency's action to be set down in any particular order or form, or even that its determinations be made in writing." 718 F.2d at 40. "All that is necessary is that a reviewing court be able to trace from the written record the path followed by the agency in deciding to take a particular action." Id. (citing Bowman Transp. Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285-86, 95 S.Ct. 438, 441-42, 42 L.Ed.2d 447 (1974)).
 
 
 10
 The record amply supports the district court's conclusion that each of the challenged determinations was made. First, contrary to appellant's claim that the EPA failed to obtain the State's certification of its compliance with the public participation requirement of 40 C.F.R. Sec. 35.2040, the State's letter of April 25, 1983 "certified that all applicable Federal requirements detailed in the Delegation Agreement have been met." As for Orangetown's charge that appellees have not satisfied the requirement of 40 C.F.R. Sec. 35.2105 that the applicant indicate whether any facilities planning or design was performed by anyone appearing on a master list of debarments, the checklist notes that the applicant did not indicate that performance by such a person had occurred. The notation on the checklist is all that the regulation requires. See 40 C.F.R. Sec. 35.2105. In addition, the value engineering required by 40 C.F.R. Sec. 35.2114 was conducted, as is shown by the State's subsequent written approval.
 
 
 11
 Rockland submitted satisfactory interim and final evaluations of infiltration and inflow capacity as required by 40 C.F.R. Sec. 35.2120. Regarding Orangetown's claim that the EPA failed to determine whether any of Rockland's pre-award costs were eligible for federal funds, see 40 C.F.R. Sec. 35.2118, both the grant application and the grant agreement specifically excluded preliminary expenses from the grant award.
 
 
 12
 Finally, as for Orangetown's claim that the environmental review of the project was inadequately documented, see 40 C.F.R. Sec. 35.2113, EPA's finding of no significant impact was upheld by this Court on the prior appeal, 718 F.2d at 39, and the State has certified that there are no changes in the project which require additional environmental assessment.
 
 III
 
 13
 Shifting its attack to the NEPA requirements, Orangetown contends that the regional EPA administrator erred in failing to declare that three significant changes had occurred in the project so as to require new environmental review: (1) the segmentation of the grant financing of the project, (2) the location of the compost facility, and (3) the amount of influent and outflow expected for the system. This Court previously has determined that no environmental impact statement was necessary for the Rockland project. 718 F.2d at 39. The regulations call for additional environmental review only if "the responsible official determines that a significant change has occurred in the project or its impact ...." 40 C.F.R. Sec. 6.502(a)(2).
 
 
 14
 Orangetown submits that, in view of the grant method of financing, further environmental review is necessary in order to assess the possible adverse impact should Rockland lose its federal financing by failing to satisfy one of EPA's grant conditions. This possibility was not overlooked by EPA, which required assurances from Rockland that it has the financial capacity to build, operate and maintain the waste treatment facility. As the district court noted, the County "has pledged that it will finish the project if federal funding is interrupted."
 
 
 15
 Orangetown's claim that the location of the compost facility requires additional environmental review is equally unfounded. Appellant argues that public opposition to locating the compost site in Clarkstown may force Rockland to relocate the facility elsewhere. However, there has yet to be a change in the location of the compost facility that would require additional environmental review. As the district court properly stated, "[t]he belief of plaintiff's counsel that such litigation may take place in the future is no basis for finding that any change has taken place ...." (Emphasis in original).
 
 
 16
 Finally, Orangetown contends that significant changes affecting the inflow and outfall capacity of the facility require additional review. Although this Court rejected a similar argument on the prior appeal, 718 F.2d at 38, appellant now asserts that a slightly larger inflow estimate requires new environmental review. We agree with the district court that "[t]his is not an allegation of 'significant change' in the project or its impact, but only of a possible revision of estimated future inflow."
 
 
 17
 Although a court must construe the allegations of a complaint in the light most favorable to the plaintiff, see Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir.1975), summary judgment is nevertheless proper if, on the facts as alleged, defendant is entitled to judgment as a matter of law. See Quinn v. Syracuse Model Neighborhood Corp., supra, 613 F.2d at 444-45. Because Orangetown has not provided us with any reason to disturb the district court's judgment, we affirm.
 
 
 
 *
 Of the United States District Court for the Southern District of New York, sitting by designation