**Emmanuel ESHUN, Plaintiff,**

v.

**NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES, Defendant.**

**No. 86 Civ. 1178 (LLS).**

United States District Court, S.D. New York.

Jan. 22, 1987.

---

**1.** Notice of the hearing was given on October 27, 1986.

Emmanuel Eshun, pro se.

State of New York Dept. of Law, New York City, for defendant; Randolph Volkell, Asst. Atty. Gen., of counsel.

## OPINION AND ORDER

STANTON, District Judge.

Plaintiff Emmanuel Eshun claims employment discrimination based on race and national origin under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.[1] and 42 U.S.C. § 1981[2], and deprivation of a property interest in his job without due process of law (42 U.S.C. § 1983).[3] Defendant N.Y. Department of Social Services has moved to dismiss for

---

1. 42 U.S.C. § 2000e-2 provides as follows:

   (a) It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or ...

2. 42 U.S.C. § 1981 provides that

   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

3. 42 U.S.C. § 1983 provides that

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), and alternatively, for summary judgment pursuant to Fed.R.Civ.P. 56. Defendant's motion for summary judgment with respect to Mr. Eshun's employment discrimination claim is granted. Mr. Eshun's § 1983 claim is barred by the sovereign immunity of the state under the Eleventh Amendment.

No material fact is in dispute.

## FACTS

In March 1984, Mr. Eshun, whose name as a former New York State government employee appeared on the New York State Civil Service reemployment roster, applied for a position as a Management Specialist Trainee in the New York City Metropolitan Office of Audit and Quality Control, New York State Department of Social Services ("DSS"). Mr. Eshun was notified by letter dated March 29, 1984 that he had been appointed to the position, effective April 12, 1984. Complaint, Exhibit 2. Several other employees, including Lawrence J. Byrne, Gerard J. Fennelly and Winston Devonish, were hired at the same time. Complaint, # 9D, p. 1, ¶ 2.

Shortly after their employment began, however, the New York State Department of Civil Service ("Civil Service") discovered that an error had been made, and that Mr. Eshun and these other employees were not eligible for permanent appointment to the Management Specialist Trainee position. They were informed by telephone on April 25, 1984 that their status would be changed. Complaint, # 9D, p. 1, ¶ 3. Byrne, Fennelly and Devonish did not possess permanent reemployment rights. At that time, Civil Service believed that Mr. Eshun possessed permanent reemployment rights because of prior permanent service,

but that he had not taken the Administration option of the Professional Careers Test, which is required for the Management Specialist Trainee position. The Civil Service advised DSS to appoint Mr. Eshun provisionally as a Management Specialist Trainee pending his passing the Administration option Test.

On May 4, 1984 Civil Service informed DSS that Mr. Eshun was not qualified for the Management Specialist Trainee position because he had (1) failed an earlier Administration option of the Professional Careers Test with a score of 55.0, and (2) previously been "terminated during probation" as a Tax Compliance Agent I. Defendant's Rule 3(g) Statement, ¶ 2.[4] Mr. Eshun had written on his pre-employment application that he had been "laid off due to budget cut". Affidavit of Randolph Volkell, sworn to April 16, 1986 ("Volkell Aff."), Exhibit K. DSS verified Mr. Eshun's termination during probation by calling Mr. Eshun's former employer, the Department of Taxation and Finance. Volkell Aff., Exhibit M. As a result of that probation termination, Mr. Eshun did not possess permanent reemployment rights, and was coded RC–3 on the reemployment roster. Individuals coded RC–3 are not eligible for permanent appointments. Volkell Aff., Exhibit L.

DSS then informed Mr. Eshun that it was terminating his appointment but that he would remain eligible for non-permanent appointments from the reemployment roster. Volkell Aff., Exhibit D.

Mr. Eshun responded, requesting information about the examination he had failed. Volkell Aff., Exhibit N. This information was supplied to Mr. Eshun. Volkell Aff., Exhibit O.

DSS apparently attempted to find positions for the employees whom it terminated from their original appointments. Byrne,

---

**4.** Under Rule 3(g) of the Civil Rules for the Southern and Eastern Districts of New York, the non-movant in a summary judgment motion is deemed to have admitted all material facts set forth in movant's Rule 3(g) statement which he fails to controvert in a statement of contested material facts. *See Woods v. State of New York,* 469 F.Supp. 1127, 1129 n. 2 (S.D.N.Y.1979), *aff'd*

*mem.,* 614 F.2d 1293 (2d Cir.1979) (accepting movant's uncontroverted Rule 9(g) [predecessor of present Rule 3(g)] statements of material fact as admitted for purposes of summary judgment motion); *Capano Music v. Myers Music, Inc.,* 605 F.Supp. 692, 697 (S.D.N.Y.1985) (same). Plaintiff has failed to file a statement of contested material facts.

Devonish and Fennelly were retained in temporary positions as Project Assistants, for which they possessed the minimum qualifications. Volkell Aff., Exhibit I. When it was discovered that Mr. Eshun was ineligible for permanent status, he was also considered for the same temporary position as the other three employees, but was found not to be qualified for it. A candidate for the Project Assistant position needed to possess (1) a bachelor's degree and (2) one year of full-time paid experience in (a) implementing, planning, managing, or developing a human services program, or (b) conducting organizational studies to identify and solve administrative and management problems, including a substantial amount of non-technical writing, or (c) planning and delivering training programs or (d) the field of systems analysis. Volkell Aff., Exhibit E. According to his resume, Mr. Eshun had bachelor's and M.B.A. degrees, but did not have the required year of experience in any of the designated areas. Volkell Aff., Exhibit E.

DSS attempted to find another position for Mr. Eshun. DSS requested an extension of Mr. Eshun's termination date in order to investigate the possibility of retaining him in some other position based on his having passed the Professional Careers in Research Services, Exam # 25–170, General Research. Volkell Aff., Exhibit F. There are apparently two positions which can be filled from the examination that Mr. Eshun had passed: Research Assistant and Program Research Specialist. Civil Service informed DSS that there were "preferred lists" for both these positions in New York City, which precluded DSS from appointing Mr. Eshun to them. Volkell Aff., Exhibit F, H. Finally DSS notified Mr. Eshun, "We have reviewed your resume against other vacancies in the Department and, unfortunately, we do not have a job opportunity for you at this time." Complaint, Exhibit 3; Volkell Aff., Exhibit G.

In his complaint, Mr. Eshun states that there were "at this time [about June 18–20, 1984] two vacancies in the Research Area[ ]" and that in a phone conversation with Ms. Luisa Niagi, Personnel Administrator, she stated that she had "used her own discretion to deny [Eshun] this [Research] appointment and that she would not give further reasons." Complaint, # 9D, p. 1, ¶¶ 7, 9.

On October 4, 1984, Mr. Eshun filed a complaint with the New York State Division of Human Rights, alleging discrimination based on his Ghanaian national origin. Complaint, Exhibit 11. After an investigation, the Division determined that there was "no probable cause to believe that the respondent(s) engaged in or was (were) engaging in the unlawful discriminatory practice complained of." Volkell Aff., Exhibit J. On November 18, 1985, the Equal Employment Opportunity Commission issued its finding that "there is not reasonable cause to believe that the charge is true." Mr. Eshun commenced this action by summons and complaint dated February 7, 1986.

Mr. Eshun alleges that the "Department of Social Services terminated my employment in a discriminatory faction [sic] based on my race and national origin." Complaint, # 9D, p. 2, ¶ 5. He claims DSS denied him a position as a Project Assistant to which he was qualified or "entitled." Aff. in Opposition to Summary Judgment Motion, July 9, 1986, p. 2.

## DISCUSSION

■ Mr. Eshun claims employment discrimination based on race and national origin under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. DSS argues that suit against it as a state agency is barred by the Eleventh Amendment to the U.S. Constitution.[5] It is clear that Mr.

5. The Eleventh Amendment provides that the
The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
*Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed.2d 842 (1890) held that the amendment

Eshun's employment discrimination claims under Title VII are not barred by the Eleventh Amendment. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), explained that the state sovereign immunity embodied in the Eleventh Amendment can be limited by Congress's enactment of appropriate legislation pursuant to the enforcement provisions of section 5 of the Fourteenth Amendment. The Court held that private Title VII federal lawsuits against states or state officials were not barred by the Eleventh Amendment. *Fitzpatrick,* 427 U.S. at 455–56, 96 S.Ct. at 2671. Mr. Eshun may thus maintain his claim against DSS under Title VII. It is not necessary to decide whether the state and its agencies are immune from federal suit under 42 U.S.C. § 1981, since to the extent that Mr. Eshun's claim for relief alleges a violation of 42 U.S.C. § 1981, that section gives no greater protection against discriminatory employment practices than Title VII, and the elements and the allocation of the burdens of proof are the same under the two statutes. *Beverley v. Douglas,* 591 F.Supp. 1321, 1330 (S.D.N.Y.1984); *Wintz v. Port of Authority of New York and New Jersey,* 551 F.Supp. 1323, 1325 (S.D.N.Y.1982); *Gray v. Board of Higher Education, City of New York,* 692 F.2d 901, 905 n. 8 (2d Cir.1983).

■ Mr. Eshun also claims a deprivation of a property interest in his job without due process of law under 42 U.S.C. § 1983. DSS argues that suit against it as a state agency is barred by the Eleventh Amendment to the U.S. Constitution. 42 U.S.C. § 1983 creates a cause of action for legal and equitable relief against "every person" who, under color of state law, deprives a citizen of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. The Supreme Court has held that § 1983 does not abrogate, in the absence of consent, the Eleventh Amendment immunity of the states. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39

by implication also bars suits by citizens of

L.Ed.2d 662 (1974). That immunity extends to suits against state agencies. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). Accordingly, the Eleventh Amendment proscribes Mr. Eshun's § 1983 action against DSS. That bar applies both to the demand for damages and the demand for injunctive relief under § 1983. *Pennhurst State School & Hospital,* 465 U.S. at 102, 104 S.Ct. at 909.

Since Mr. Eshun may maintain his employment discrimination suit against DSS under Title VII, we turn to its motion for summary judgment.

## MOTION FOR SUMMARY JUDGMENT UNDER TITLE VII

### Summary Judgment Standards

Cases brought under the civil rights laws should be treated so as to promote the "purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973); *see also Griggs v. Duke Power Co.,* 401 U.S. 424, 429, 91 S.Ct. 849, 852, 28 L.Ed.2d 158 (1971). That does not mean, however, that employment discrimination cases need not meet the standards of Fed.R.Civ.P. 56. "When, in fact, nothing remains to be tried, a defendant has the right to judgment without the expense of a trial. Courts must protect defendants from oppressive and meritless litigation." *Reich v. New York Hospital,* 513 F.Supp. 854, 863 (S.D. N.Y.1981); *see also Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985).

*McDonnell Douglas* requires that the plaintiff carry the initial burden of establishing a *prima facie* case of racial discrimination by showing (1) that he belongs to a racial minority; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite his

the defendant.

qualifications, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek employees with plaintiff's qualifications. *Id.* at 802, 93 S.Ct. at 1824. These requirements were not intended to be rigid; the elements of a plaintiff's case under Title VII will vary with the particular circumstances. *Id.* at 802 n. 13, 93 S.Ct. at 1824 n. 13.

■ If the plaintiff makes out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decisions. Then, if defendant meets that burden, the burden shifts back to the plaintiff to show that the reasons given by the defendant are merely a pretext for discrimination. *Id.* at 802–804, 93 S.Ct. at 1824–1825; *Reich,* 513 F.Supp. at 859.

■ The standards for summary judgment apply to each step of the *McDonnell Douglas* analysis. *Meiri,* 759 F.2d at 995. Summary judgment is appropriate only upon a demonstration "(1) that there is no genuine issue of material fact to be tried in the case and (2) that the moving party is entitled to judgment as a matter of law." *Seymore v. Reader's Digest Ass'n, Inc.,* 493 F.Supp. 257, 262 (S.D.N.Y.1980); *see also Town of Orangetown v. Ruckelshaus,* 740 F.2d 185, 190 (2d Cir.1984); *Universal City Studios, Inc. v. Nintendo Co., Ltd.,* 746 F.2d 112, 115 (2d Cir.1984). The moving party bears the burden of showing the absence of any issue of material fact, and in reviewing a summary judgment motion a district court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985). On the other hand, the non-movant may not rest upon conclusory allegations or denials to defeat the motion, but rather must provide "concrete particulars" in the form of supporting facts or arguments in opposition. *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984).

*No Prima Facie Case*

■ While the plaintiff's "burden of establishing a *prima facie* case of disparate treatment is not onerous," *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), Mr. Eshun fails to meet even that minimal burden.

DSS concedes that Mr. Eshun is a male member of a minority group. Mr. Eshun thereby establishes the first element of the *prima facie* case, requiring membership in a minority race.

The second element is not as easily satisfied, and Mr. Eshun does not meet it. Although Mr. Eshun applied for a Management Specialist Trainee position, he was not qualified for the position because he had (1) failed the June 19, 1982 Administration option of the Professional Careers Test, which is required for the position, and (2) previously been terminated during probation as a New York State Tax Compliance Agent. Further, he lacked the requisite experience for the Project Assistant position. Moreover, Mr. Eshun cannot claim that after his dismissal DSS continued to seek employees with Mr. Eshun's qualifications for either position.

Thus, Mr. Eshun has failed to establish a *prima facie* case of employment discrimination based on his race and national origin.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment on plaintiff's employment discrimination claim is granted. Mr. Eshun's property interest claim is barred by the sovereign immunity of the state under the Eleventh Amendment. The Clerk is directed to enter judgment dismissing the complaint.